IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TODD WAYNE MULDER,<br><br>        Plaintiff,<br><br>v.<br><br>WARDEN NIELSON,<br><br>        Defendant. | **MEMORANDUM DECISION &<br>ORDER GRANTING MOTION TO<br>DISMISS HABEAS PETITION**<br><br>Case No. 2:18-CV-98-DAK<br><br>District Judge Dale A. Kimball |

## BACKGROUND

**State criminal case.** Petitioner was convicted of murder, and aggravated robbery and kidnapping. *State v. Mulder*, 2009 UT App 318, ¶ 1. He was sentenced to three five-to-life terms. (Doc. No. 1.) His direct appeal ended when the Utah Supreme Court denied certiorari review on March 5, 2010. *State v. Mulder*, 230 P.3d 127 (table) (Utah 2010). Petitioner did not seek relief in the United States Supreme Court. The time to do so expired June 3, 2010. Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of certiorari to review a judgment in any case . . . entered by a state court of last resort").

**State post-conviction case.** On August 25, 2010 Petitioner applied for state post-conviction relief. *Mulder v. State*, 2016 UT App 207, ¶ 10. Summary judgment was granted for the State and affirmed by Utah Court of Appeals. *Id*. ¶ 11. Utah Supreme Court denied certiorari review on March 10, 2017. *Mulder v. State*, 393 P.3d 285 (table) (Utah 2017).

Petitioner filed this federal habeas petition on January 29, 2018. (Doc. No. 1.) Respondent moves for dismissal, (Doc. No. 12), and Petitioner has responded, (Doc. No. 14).

**ANALYSIS**

Federal statute sets a one-year period of limitation to file a habeas-corpus petition. 28 U.S.C.S. § 2244(d)(1) (2019). The period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. § 2244(d)(1)(A). So, when the time expired for Petitioner to seek certiorari review in the United States Supreme Court on June 3, 2010, the one-year limitation period began running.

### 1. Statutory tolling

The limitation period "is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period." *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(2) (2019)). A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002)); *see Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014). Once the post-conviction case ends in state court, the one-year limitation period begins to run again.

Tolling, however, does not revive the limitations period--i.e., restart the clock at zero. It serves only to suspend a clock that has not already run. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003). Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. And, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also counts toward the limitations period because state-collateral review only pauses the one-year

period; it does not delay its start. *See McMonagle v. Meyer*, 766 F.3d 1151, 1159 (9th Cir. 2014) (J. Rawlinson, dissenting) ("Although filing of collateral proceedings may toll the running of the limitations period, it does not affect commencement of the running of the limitations period.").

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, *aggregate* to count against the one-year-limitation period. *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

From June 3, 2010, the limitation period ran 83 days, when, on August 25, 2010, Petitioner filed his (ultimately unsuccessful) state post-conviction application and tolled the period. 282 days remained at that point. The state post-conviction action concluded on March 10, 2017, when the Utah Supreme Court denied certiorari review. *Mulder*, 393 P.3d at 285. The period began running on that day and expired 282 days later on December 18, 2017.

Petitioner filed this federal action on January 29, 2018--42 days too late.

### 2. Equitable tolling

Petitioner suggests his lateness is excused because of these circumstances: He was at times in maximum security with limited access to legal materials; was separated from his legal work by two cell searches; lacked legal resources; was not told by contract attorneys "how the time limit is applied"; and is actually innocent. (Doc. No. 14, at 3-4.)

"Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted). Those situations include times "when a prisoner is actually innocent" or "when an adversary's conduct--or other uncontrollable circumstances--prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). And, Petitioner "has the burden of demonstrating that equitable tolling should apply." *Lovato v. Suthers*, 42 F. App'x 400, 402 (10th Cir. 2002) (unpublished).

### a. Extraordinary or uncontrollable circumstance

Petitioner asserts, "Mulder has appealed his case all through the state courts so he has obviously 'pursued his rights diligently.'" (Doc. No. 14, at 3.) But, that is not all that is required to show diligence.

Aside from vague references to time spent in "maximum security" and a couple of cell searches that allegedly compromised his legal materials, Petitioner has "failed to elaborate on how [his] circumstances" affected his ability to bring his petition earlier. *Johnson v. Jones*, 274 F. App'x 703, 705 (10th Cir. 2008). For instance, he has not identified how, between June 3, 2010 and August 25, 2010, and March 10, 2017 and January 28, 2018, he was continually and thoroughly thwarted by uncontrollable circumstances from filing. Nor has he detailed who and what would not let him file even a skeleton petition by the deadline. He also does not hint what continued to keep him from filing in the forty-two days beyond the limitation period or how extraordinary circumstances eased to let him file this habeas-corpus petition on January 29,

2018. Such vagueness is fatal to his contention that extraordinary circumstances kept him from a timely filing.

Still, Petitioner asserts his lateness should be overlooked because he lacked legal resources and legal knowledge, and had only limited help from prison contract attorneys. However, the argument that a prisoner "had inadequate law library facilities" does not support equitable tolling. *McCarley v. Ward*, 143 F. App'x 913, 914 (10th Cir. 2005); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to say that the . . . facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate."). Further, it is well settled that "'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citation omitted). Finally, simply put, "'[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.'" *Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted)); *see also* 28 U.S.C.S. § 2254(i) (2019) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). It follows that Petitioner's contention that the prison contract attorneys' lack of help thwarted his habeas filings does not toll the period of limitation. *See, e.g., Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.").

Petitioner has not met his burden of showing that--during the running of the federal period of limitation and beyond--he faced extraordinary circumstances that stopped him from

5

timely filing or took specific steps to "'diligently pursue his federal claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008). Petitioner thus has not established this first basis for equitable tolling.

### b. Actual innocence

Finally, the Court parses Petitioner's contention--based on co-defendant Campbell's recantation--that the period of limitation should be tolled because he is actually innocent.

Apparently, in his state post-conviction action, Petitioner

> submitted two affidavits from Campbell, in which Campbell attested that "Mulder was innocent of all charges" and that Campbell had previously "lied about [Mulder's] involvement." Campbell also attested that he had "trick[ed]" Mulder . . . "into going to Mesquite, . . . under false pretenses." He further claimed that on the day of the murder, he dropped Mulder off at a shopping complex in Mesquite and then "went to St. George and did the armed robbery . . . completely alone."

*Mulder*, 2016 UT App 207, at ¶ 13 (alterations, except second ellilpses, in original).

Petitioner has not provided the affidavits in this Court. The Court knows only how the Utah Court of Appeals described them above and how Petitioner describes them below.

He first uses the recantation as one of the substantive grounds for habeas relief. His entire argument is as follows:

> Daniel Cambell [sic] was the perpetrator of this crime. During his trial testimony, he said that Mulder planned the robbery with him and was waiting outside in the truck for him. He has since recanted with a handwritten confession, and then a year later through attorney Margaret Lindsay in a notarized affidavit. He now admits that Mulder did not plan the robbery with him, do the robbery with him, or even know that there had been a robbery and subsequent murder until well after the fact.

(Doc. No. 1, at 10.)

6

He then uses the recantation as a basis for equitable tolling, in full:

> Mulder does claim that he is actually innocent and has filed a new evidence claim in his state post-conviction, that being the recantation of co-defendant Daniel Cambell. Daniel Cambell was the driving force behind Mulders conviction and he now claims his trial testimony was a lie and was coerced into making that testimony. [sic]

(Doc. No. 14, at 3.)

"[T]o claim actual innocence a petitioner must present new, reliable evidence that was not presented at trial. Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Rose v. Newton-Embry*, 194 F. App'x 500, 502 (10th Cir. 2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Further, this evidence must "affirmatively demonstrate . . . innocence," not just "undermine the finding of guilt." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (1993). After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'" *See Rose*, 194 F. App'x at 502 (quoting *Schlup*, 513 U.S. at 329). Such evidence is so very rare, though, that "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324.

First, Petitioner has not presented new, reliable evidence in this Court that was not presented at trial. He has said here that affidavits exist and vaguely described their content, but he has not provided the affidavits to this Court. And his cursory statements describing the recantation do not hint that the absent affidavits are reliable even if they were available to be seen. Petitioner does not evince recognition that reliability and trustworthiness are important, at issue, or requirements.

Moreover, Petitioner has completely ignored his burden to show that the "new evidence" was so strong that "no reasonable juror" would have found him guilty. *See id.* at 329. Meanwhile, in six paragraphs and a lengthy footnote, the Utah Court of Appeals thoroughly reviewed Campbell's recantation affidavits in reaching the conclusion that "a reasonable jury could choose to disregard Campbell's affidavits and convict Mulder based on the other evidence presented at trial. *Mulder*, 2016 UT App 207, ¶¶ 13-18 & n.2. Consequently, Mulder has not demonstrated that Campbell's affidavits--when 'viewed with all the other evidence'--are such that 'no reasonable trier of fact could have found [him] guilty.'" *Id.* ¶ 18 (quoting Utah Code Ann. § 78B-9-104(1)(e)(iv)).

Any factual findings contained in the court of appeals's decision are presumed correct by this Court. *See* 28 U.S.C.S. 2254(e)(1) (2019). And there is no argument or indication that the court of appeals's legal conclusions "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). The Court thus does not treat this issue further, rejecting Petitioner's contention that actual innocence provides a basis for equitable tolling.

## CONCLUSION

Petitioner's habeas petition is untimely. And Petitioner has not met his burden of showing that--during the running of the federal period of limitation and beyond--he faced extraordinary circumstances that stopped him from timely filing or took specific steps to "'diligently pursue his federal claims.'" *Yang*, 525 F.3d at 930. Nor has he validly asserted his actual innocence. Petitioner thus has not established a basis for equitable tolling.

**ORDER**

**IT IS ORDERED** that:

(1) Respondent's motion to dismiss is **GRANTED**. (Doc. No. 12.) This federal habeas petition was filed past the period of limitation and neither statutory nor equitable tolling rescue the delay from the limitation period's operation.

(2) A certificate of appealability is **DENIED**.

(3) The Clerk of Court is directed to **CLOSE** this action.

DATED this 18th day of June, 2019.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL
United States District Judge